**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

HOTALING & CO., LLC and SANNITI LLC,

*Plaintiffs*,

v.

BERRY SOLUTIONS INC. d/b/a SUPREME SUPPLIERS and EMC GROUP INC.,

*Defendants*.

Civil No.: 20-cv-18718 (KSH) (CLW)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

## I. Introduction

This case concerns the alleged unlawful importation, marketing, and sale of maraschino cherries. Plaintiffs Hotaling & Co., LLC and Sanniti LLC—respectively the exclusive United States importer and an authorized distributor of Luxardo brand maraschino cherries—allege that the two defendants, Berry Solutions Inc. d/b/a/ Supreme Suppliers and EMC Group Inc., violated their rights under both federal and state law by unlawfully importing, marketing, and selling Luxardo brand maraschino cherries not intended or authorized for sale in the United States. Defendants have moved to dismiss the complaint under Rules 12(b)(1), 12(b)(6), and 12(b)(7). The motion is fully briefed, and the Court decides it without oral argument.

## II. Background

According to the allegations in the complaint, Luxardo Original Maraschino Cherries ("Luxardo cherries") are "world-famous, high-end cherries" that are manufactured in Italy by a company called Girolamo Luxardo S.P.A. (D.E. 1, Compl. ¶ 10.) Girolamo first began selling Luxardo cherries in or around 1905. (*Id.*)

Girolamo owns all trademarks for Luxardo cherries, including the trademark covering the

design of the front label for their packaging. (*Id.* ¶ 11.) Girolamo has granted to Hotaling the exclusive right to import, supply, and market Luxardo cherries in the United States, and Hotaling is also a licensee of Girolamo's trademarks in the United States. (*Id.* ¶ 12.) Through its relationship with Hotaling, Sanniti is an authorized United States distributor of Luxardo cherries.[1] (*Id.* ¶ 13.)

Products authorized by Girolamo for importation and sale in the United States have a prominent legend that identifies Hotaling as the importer and provides Hotaling's website address. (*Id.* ¶¶ 15, 18.) Those products also bear the required United States labeling information for food products, such as serving size, nutrition information, a safety notice, and the "best before" date in the standard "Month/Day/Year" format. (*Id.*) Products authorized by Girolamo for importation and sale in markets outside of the United States do not include this labeling. (*Id.* ¶ 16.)

Plaintiffs assert, on information and belief, that defendants[2] "have purchased no less than 24,288 units" of Luxardo cherries not intended or authorized for sale in the United States and have sold a substantial quantity of those units in the United States, including in New Jersey, through online retailers such as Amazon at materially lower prices. (*Id.* ¶¶ 20-22.) The unauthorized Luxardo cherries bear packaging that materially differs from the packaging on the Luxardo cherries authorized to be sold in the United States. (*Id.* ¶ 23.) For example, the unauthorized Luxardo cherries have Italian-language labels and packaging that neither comply with United States labeling laws nor bear Hotaling's name and contact information. (*Id.* ¶¶ 24-25.) Plaintiffs also point to a series of product listings on Amazon for unauthorized Luxardo

---

[1] The relevant agreements executed between the parties are not annexed to the complaint.

[2] Plaintiffs allege, also on information and belief, that defendants are "related" entities, and that EMC transacts business on behalf of Supreme Suppliers and/or at its request. (*Id.* ¶ 5.)

cherries, which allegedly contain false and/or "confusing" information or display misleading product images. (*See id.* ¶¶ 26-31.)

Plaintiffs notified defendants on several occasions that their marketing and sale of the unauthorized Luxardo cherries constitute unfair competition with Girolamo, Hotaling, Sanniti, and other authorized sellers of Luxardo cherries. (*Id.* ¶¶ 33, 35.) For example, on or about November 3, 2020, Hotaling's counsel sent a cease and desist letter to defense counsel demanding that defendants immediately cease and desist from all unlawful activities and repeated these demands in various subsequent communications. (*Id.* ¶¶ 37-38.) However, defendants have continued to market and sell unauthorized Luxardo cherries on Amazon. (*Id.* ¶¶ 35-38.)

Plaintiffs filed this lawsuit on December 10, 2020, bringing claims for unfair competition under both the Lanham Act, 15 U.S.C. § 1125(a), and state law. (*See id.* ¶¶ 39-46.) Defendants' motion (D.E. 10) pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7), argues that the complaint should be dismissed for three reasons: first, because plaintiffs lack standing to sue under the Lanham Act; second, because plaintiffs failed to join Girolamo, a necessary and indispensable party, to the lawsuit; and third, because plaintiffs engaged in impermissible "group pleading" in violation of Rule 8. (D.E. 10-1, Moving Br; D.E. 17, Reply Br.) Plaintiffs oppose the motion, arguing that they satisfied their burden of establishing standing pursuant to the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), and that the complaint is otherwise sufficient to survive a motion to dismiss under Rules 12(b)(6) and 12(b)(7). (D.E. 15, Opp. Br.)

## III. Standing

### A. Standard of Review

Defendants first argue that the complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because plaintiffs lack standing to sue under the Lanham Act. When deciding a motion to dismiss for lack of subject matter jurisdiction, the Court must first determine whether the movant presents a "facial" or "factual" attack to jurisdiction, as the distinction determines how the motion is reviewed. If a defendant lodges a facial attack contending that the allegations in the complaint fail to establish jurisdiction, "the Court must consider the allegations of the complaint as true, and in that respect such a Rule 12(b)(1) motion is similar to a Rule 12(b)(6) motion." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (internal citations and quotations omitted). Factual attacks, on the other hand, are premised on the contention that "the facts of the case . . . do not support the asserted jurisdiction." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When considering a factual attack, "a court may weigh and 'consider evidence outside the pleadings.'" *Id.* (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). Regardless of whether a challenge is facial or factual, however, "the Plaintiff has the burden to prove that the Court has jurisdiction." *Bd. of Trustees of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (Debevoise, J.).

Here, defendants primarily argue that the allegations in the complaint fail to establish standing, but further contend that "the limited public information available" outside of the complaint also supports dismissal. More specifically, defendants argue that plaintiffs' allegation that the unauthorized Luxardo cherries are "materially different" than the Luxardo cherries authorized for sale in the United States is "not true." (Mov. Br. at 11.) To support this contention, defense counsel submitted a declaration attaching three exhibits, which purportedly demonstrate that retailer Williams-Sonoma distributes Luxardo cherries in containers which, like

the containers that hold defendants' unauthorized Luxardo cherries, neither identify Hotaling nor provide an expiration date in the standardized American format. (D.E. 10-2, Berkowitz Decl.) Because defendants have presented a sworn statement with their motion contesting at least some of the facts in the complaint, the Court will construe their motion as a factual attack and consider evidence presented outside of the pleadings. *See Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines*, Inc., 673 F.2d 700, 711 (3d Cir. 1982) ("[Movant's] motion was supported by a sworn statement of facts. It therefore must be construed as a factual, rather than a facial attack on the court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."); *Williams v. New Jersey Transit Rail Operation*, 2021 WL 4099733, at *2 (D.N.J. Sept. 9, 2021) (Martinotti, J.) (analyzing motion to dismiss and recognizing that "[t]he submission of a signed declaration or a sworn statement of facts disputing the non-movant's factual allegations constitutes a factual challenge to subject matter jurisdiction") (internal citations and quotations omitted); *Irizarry v. United States*, 2019 WL 4785738, at *2 (D.N.J. Sept. 30, 2019) (Salas, J.) (movant made factual challenge to subject matter jurisdiction on motion to dismiss where it "controverted Plaintiff's factual allegations with affidavits").

**B. Discussion**

Plaintiffs assert an unfair competition claim under 15 U.S.C. § 1125(a), which provides that "any person who believes that he or she is likely to be damaged" may bring a civil action against:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person,

> or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a). Consistent with 15 U.S.C. § 1125(a)'s broad language conferring the right to bring a civil action on *any person* who believes that he or she is likely to be damaged by the prescribed conduct, courts in this district have recognized that both trademark holders and licensees have standing to assert a 15 U.S.C. § 1125(a) claim. *See, e.g., O.O.C. Apparel, Inc. v. Ross Stores, Inc.*, 2007 WL 869551, at *3 (D.N.J. Mar. 20, 2007) (Sheridan, J.) (recognizing that 15 U.S.C. § 1125(a) permits claims by trademark licensees).

In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme Court established a two-part test to determine whether a plaintiff has standing to sue under 15 U.S.C. § 1125(a). First, the court must assess whether the plaintiff's interests "fall within the zone of interests protected by the law invoked." *Lexmark*, 562 U.S. at 129 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). To satisfy this first prong, the plaintiff "must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32. Second, the Court must determine whether the plaintiff's "injuries are proximately caused by violations of the statute." *Id.* at 132. Ordinarily, a plaintiff suing under 15 U.S.C. § 1125(a) "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Here, plaintiffs have satisfied the two-part test set forth in *Lexmark*. They have adequately alleged in the complaint both a "commercial interest in reputation or sales" and an "injury" to that interest. Hotaling is the "exclusive" United States importer of Luxardo cherries,

and Sanniti is an authorized distributor of Luxardo cherries vis-à-vis its relationship with Hotaling, yet defendants have sold a "substantial quantity" of unauthorized Luxardo cherries at materially lower prices in the same market as plaintiffs. (Compl. ¶¶ 2-3, 21-32.) Plaintiffs have also adequately alleged an injury "flowing directly" from defendants' deception, including that defendants' unauthorized sale and marketing of Luxardo cherries is likely to cause confusion among consumers. For example, plaintiffs have alleged that defendants' conduct may deceive the public into mistakenly believing that defendants' activities are "authorized, endorsed, sponsored, or approved" by plaintiffs and/or Girolamo, or that the unauthorized Luxardo cherries are intended and authorized for sale in the United States. (*Id.* ¶¶ 40-41.) Plaintiffs have similarly alleged that defendants' packaging lacks information required by United States law, which could result in damage to plaintiffs' business and reputation. (*Id.* ¶¶ 24, 42, 46.)

Because this is a factual attack to subject matter jurisdiction, the Court "is free to weigh the evidence" presented by defendants in connection with the instant motion to "satisfy itself as to the existence of its power to hear the case." *Startrak Sys., LLC v. Hester*, 2007 WL 2705159, at *4 (D.N.J. Sept. 14, 2007) (Debevoise, J.) (quoting *Int'l Ass'n of Machinists*, 673 F.2d at 711); *Rovinsky v. Choctaw Mfg. & Dev. Corp.*, 2009 WL 3763989, at *2 (D.N.J. Nov. 10, 2009) (Brown, J.) (recognizing that a court is "free to consult evidence outside the pleadings" if faced with factual attacks to jurisdiction). Here, defendants provided the Court with three exhibits, which reveal that retailer Williams-Sonoma, an "exclusive" seller of Luxardo cherries, sells Luxardo cherries in the United States that neither identify Hotaling as their exclusive distributor nor display the "best before" date in standard American format. But plaintiffs do not dispute that there are other authorized sellers of Luxardo cherries. (*See* Compl. ¶ 33 (alleging that defendants' conduct "constitutes unfair competition with [Girolamo], Hotaling, Sanniti, ***and***

***other authorized sellers***") (emphasis added).) Accordingly, whether Williams-Sonoma has an arrangement with Girolamo to sell Luxardo cherries in the United States has no bearing on whether defendants' marketing and sale of unauthorized Luxardo cherries proximately caused plaintiffs to suffer an injury under the Lanham Act. Thus, defendants' supplemental evidence does not negate the Court's finding that plaintiffs have established standing under *Lexmark*.

Irrespective of the fact that plaintiffs have satisfied the two-part test set forth in *Lexmark*, defendants argue that the matter should be dismissed because it is unclear whether the relevant agreements between Girolamo, Hotaling, and Sanniti confer standing on plaintiffs to bring the instant lawsuit. More specifically, defendants contend that "[t]he line that separates the licensees with standing from the licensees without standing is drawn by the language of the contract—specifically, the nature of the rights the license grants the licensee." (Mov. Br. at 9.) Because plaintiffs "fail[ed] to attach the relevant agreements" to the complaint and failed to "even allege that Plaintiffs have the rights necessary to bring this suit," defendants argue that the case should be dismissed. (*Id.*) Defendants cite to a number of cases to support this proposition, two of which are from this district. But both of those cases are distinguishable because they involved licenses that expressly prohibited the plaintiffs from bringing claims against third parties. *See, e.g.*, *Tr Worldwide Phillyfood, LLC v. Tony Luke, Inc*, 2017 WL 396539, at *3-4 (D.N.J. Jan. 30, 2017) (Kugler, J.) (dismissing claims under § 1125(a) for lack of standing because the express terms of the license prohibited plaintiff from suing third parties); *see also O.O.C. Apparel*, 2007 WL 869551, at *3-4 (dismissing unfair competition claims where plaintiff lacked contractual right to bring suit). Here, there are no allegations in the complaint indicating that plaintiffs are contractually prohibited from bringing actions under § 1125(a), and the parties have presented no evidence to the contrary.

In light of the foregoing, plaintiffs have satisfied their burden of establishing standing and defendants' motion to dismiss the complaint for lack of subjection matter jurisdiction is denied.

## IV. Failure to Join a Necessary and Indispensable Party

### A. Standard of Review

Defendants next argue that the complaint should be dismissed under Rule 19 because Girolamo is a necessary and indispensable party that must be joined in the lawsuit. Rule 19 provides as follows:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> . . .
>
> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

In conducting a Rule 19 analysis, a court first "must determine whether the absent [party] should be joined as [a] 'necessary' part[y] under Rule 19(a)." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). If the party should be joined "but [its] joinder is not feasible inasmuch as it would defeat diversity of citizenship" the Court "next must determine whether the absent part[y] [is] 'indispensable' under Rule 19(b)." *Id.* If the party is deemed indispensable under Rule 19(b), "the action cannot go forward." *Id. See, e.g.*, *Callas v. Callas*, 2021 WL 3400861, at *6 (D.N.J. Aug. 4, 2021) (Vazquez, J.) (explaining two-step analysis under Rule 19).

Defendants have failed to establish that Girolamo is a necessary party under Rule 19(a). As a preliminary matter, defendants argue that trademark owners are "indispensable for Rule 19 purposes." (Mov. Br. at 13.) But defendants cite to no binding, in-circuit authority to support their position, and the authority they do cite refers to the indispensability of trademark owners in trademark infringement actions—not unfair competition actions under § 1125(a). *See, e.g., Earl v. Peverett*, 1991 WL 33281, at *1 (S.D.N.Y. Mar. 7, 1991) ("[T]rademark owners [are] indispensable for Rule 19 purposes in infringement actions."); *Reynolds v. Banks*, 2012 WL 2524332, at *5 (E.D. Mich. June 29, 2012) (same); *Marrero Enters. of Palm Beach, Inc. v. Estefan Enters., Inc.*, 2007 WL 4218990, at *2 (S.D. Fla. Nov. 29, 2007) (same). Accordingly, defendants' threshold argument is unpersuasive.

Defendants next argue that "proceeding without [Girolamo] is not practical" because Girolamo's trademarks "will be challenged by Defendants, which will necessarily affect [Girolamo's] rights and interests." (Mov. Br. at 14.) Again, defendants cite to no binding, in-circuit authority to support this argument, and the non-binding cases defendants do cite are distinguishable in that the trademark owners' rights were directly at issue in those cases. *See Jaguar Cars Ltd. v. Manufactures Des Montres Jaguar, S.A.*, 196 F.R.D. 306, 308 (E.D. Mich. 2000) (trademark owner was necessary party where its registrations were directly challenged and sought to be cancelled by plaintiff in connection with the lawsuit); *see also Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*, 2011 WL 7807548, at *8 (S.D. Fla. July 26, 2011) (co-owner of trademark was necessary party where owner of trademark was already a party to suit alleging trademark infringement and unfair competition). Here, on the other hand, there is no direct challenge to Girolamo's trademarks such that Girolamo must be joined in the lawsuit.

Defendants also argue—again citing only non-binding, out-of-circuit authority—that the Court will be unable to afford "complete relief to the current parties without [Girolamo]" because "[Girolamo] could file a separate lawsuit seeking the same relief." (Mov. Br. at 15.) Again, the cases cited by defendants are distinguishable in that they involve trademark infringement claims—*i.e.*, claims directly challenging the owner's trademark. *See Int'l Importers*, 2011 WL 7807548, at *8 (joining co-owner of trademark in lawsuit alleging trademark infringement and unfair competition claims); *JTG of Nashville, Inc. v. Rhythm Band, Inc.*, 693 F. Supp. 623, 626–27 (M.D. Tenn. 1988) (joining trademark owner where both trademark infringement and unfair competition claims were at issue). No such claims are directly at issue here necessitating joinder of Girolamo.

Having failed to establish that Girolamo is a necessary party under Rule 19(a),[3] defendants' motion to dismiss under Rule 12(b)(7) is denied.

## V. Improper Group Pleading

### A. Standard of Review

Defendants next argue that the complaint should be dismissed "for engaging in improper group pleading in violation of Rule 8." (Mov. Br. at 16.) Fed. R. Civ. P. 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not required, the complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. Discussion

Defendants argue that plaintiffs engaged in improper group pleading under Rule 8 because they "broadly refer[red] to the 'Defendants' collectively throughout the entire Complaint" and only distinguished between the two defendants on one occasion, which did not adequately place the individual defendants on notice of the specific claims against them. (Mov. Br. at 16-17.) To support this argument, defendants cite to several cases in which courts,

---

[3] Defendants do not argue that Girolamo cannot be feasibly joined; nor do defendants address whether Girolamo is an "indispensable party" under Rule 19(b).

including courts in this district, have dismissed claims for improper group pleading under Rule 8. But those cases are distinguishable. For example, in *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979 (D.N.J. Dec. 16, 2015) (Simandle, J.), the plaintiff filed a negligence action against eight (later reduced to four) separate business entities for an injury he suffered while working on a ship. The plaintiff's complaint contained 24 different allegations of negligence that varied widely "from violation of OSHA regulations to failure to provide a safe work place to failure to properly train employees to failure to supervise to negligent hiring," yet the plaintiff failed to specify which defendant was responsible for which duty. *Id.* at *3. The court reasoned that "[w]ithout any additional guidance as to the Defendants themselves and what functions they performed, it is impossible to untangle Plaintiffs' specific theory of liability against each Individual Defendant." *Id.* As another example, in *Shaw v. Hous. Auth. of Camden*, 2012 WL 3283402 (D.N.J. Aug. 10, 2012) (Bumb, J.), the plaintiff filed a six-count complaint against the Camden Housing Authority alleging a variety of claims—from civil rights violations and discrimination to fraud and promissory estoppel. The plaintiff later filed an amended complaint adding six previously unnamed employees of the Housing Authority as defendants, yet failed to indicate which acts or omissions were attributable to those employees. The court determined that "the new defendants [were] not on notice of the allegations against them," and thus the claims against them were subject to dismissal. *Id.* at *2.

Here, plaintiffs filed a two-count complaint against two defendants alleging one general theory of liability—unfair competition. Although plaintiffs generally assigned liability to both defendants in the complaint, plaintiffs also alleged on information and belief that the two defendants are "related" insofar as EMC transacts business on behalf of and/or at the request of Supreme Suppliers. (Compl. ¶ 5.) This is not a case in which numerous, wide-ranging

allegations were lodged against distinct entities such that defendants were not adequately placed on notice of the allegations against them. Rather, under such circumstances, "[t]he consistency of the subject of the pleading . . . , despite its group format, means that it can be reasonably inferred that each and every allegation is made against each individual defendant." *Nasdaq, Inc. v. IEX Group, Inc.*, 2019 WL 102408, at *14 (D.N.J. Jan. 4, 2019) (Martinotti, J.) (quoting *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F.Supp.2d 50, 53 (D. Mass. 2014)).

Accordingly, defendants' motion to dismiss for improper group pleading is denied.

**VI. Conclusion**

For the foregoing reasons, the Court finds that plaintiffs have standing, that they did not fail to join a necessary and indispensable party, and that the complaint does not engage in impermissible group pleading under Rule 8. Accordingly, defendants' motion to dismiss under Rules 12(b)(1), 12(b)(6), and 12(b)(7) is denied. An appropriate order will issue.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Date: October 19, 2021